IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SEAN CHRISTOPHER       :
CLEMMONS,              :
              Plaintiff,      :      1:15-cv-2003
                       :
      v.                :      Hon. John E. Jones III
                       :
UNITED STATES OF AMERICA,  :
*et al.*,                :
             Defendants.      :

## MEMORANDUM

### March 20, 2017

Sean Christopher Clemmons ("Clemmons" or "Plaintiff") originally filed this *Bivens*[1] and Federal Tort Claims Act (FTCA) action in the Northern District of Alabama on April 21, 2014 (Doc. 1, p. 33), alleging that he received improper medical treatment for hemorrhoids, while incarcerated at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkil"), Minersville, Pennsylvania. The matter was received in this Court on or about August 26, 2015. The matter is proceeding *via* an amended complaint dated January 15, 2016. (Doc. 50).

Presently before the Court is a motion (Doc. 90) to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b) and for summary

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

judgment pursuant to Federal Rule of Civil Procedure 56 filed on behalf of

National Inmate Appeals Coordinator Harrell Watts ("Watts"), Northeast Regional

Director J.L. Norwood ("Norwood"),  Warden H.L. Hufford ("Hufford"), Warden

Donald Hudson ("Hudson"), Assistant Health Services Administrator Bret

Brosious ("Brosious"), Health Services Administrator Jeremy Simonson

("Simonson"), Clinical Director Ellen Mace-Leibson ("Mace-Leibson"),

Physician's Assistant David Steffan ("PA Steffan"), Megan Lingenfelter ("PA

Lingenfelter"), Financial Specialist Michelle Ladd Kovach ("Ladd")[2], and

Business Administrator Elizabeth Fisher ("Fisher").  For the reasons set forth

below, the motions will be granted.     Additionally, Clemmons filed a document

entitled motion for summary judgment.  (Doc. 101).   A reading of the motion and

supporting brief reveals that it is not a proper motion for summary judgment.  He

states that the motion is "being filed in opposition against all defendants and their

motions to dismiss his complaint or in the alternative for summary judgment."  In

his supporting brief he states that the question involved is "[w]hether summary

judgment should be denied against all defendants. . . ."  (Doc. 104, p. 2).

Moreover, the motion is not properly supported with a statement of material facts

as required by the Local Rules of Court.  Consequently all documents submitted by

Clemmons (Docs. 100-106, 109), either in support of his "motion for summary

---

[2] Because "Ladd" is used in the amended complaint, the Court will refer to this defendant as Ladd.

judgment" or in opposition to defendants' motions, constitute his response and will be fully considered in disposing of defendants' motions.

## I.   MOTION TO DISMISS

### A.   Standard of Review

A well-pleaded complaint must contain more than mere labels and conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  In reviewing the legal sufficiency of a complaint, the Court must accept the truth of the factual allegations.  *Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006).  Notably, the assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  The controlling question is whether the complaint "alleges enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555 (rejecting the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); *see also Iqbal*, 556 U.S. at 678 (explaining that Rule 8 requires more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); *see also* Fed. R. Civ. P. 8(a)

(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief").

Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### B.     Allegations of the Amended Complaint

Clemmons arrived at FCI-Schuylkill on or about April 24, 2012, with a chronic painful hemorrhoid condition "that he had been subjected to for years." (Doc. 50, p. 2, ¶ 4; p. 3, ¶ 1, p. 4, ¶ 13).  He alleges that "Schuylkill FCI medical department and these named medical defendants/non-medical defendants were negligent, gross negligent, reckless and deliberate indiffrent [sic] in rendering medical treatment…"  He generally alleges all defendants failed in the following respects:  1) failing to select physicians competent to treat general medical ailments and hemorrhoid conditions; 2) failing to oversee all persons who practice medicine on behalf of Integrated Medical Solutions ("IMS") and FCI-Schuylkill medical department; 3) failure to formulate, adopt and enforce rules and policies to ensure quality of care; 4) failure to order appropriate diagnostic tests; 5) failure to

promptly refer him to a hemorrhoid specialist; 5) failure to minimize the risk of advancing problems related to the failure to treat conditions; 6) failure to adequately monitor, review, and modify his treatment plan; 7) neglect of patients in failing to utilize hands on care; 8) reckless neglect and gross neglect with regard to the medical needs of Clemmons in refusing or declining to treat his condition; 8) neglect and gross neglect in failing to take proactive action in treating his hemorrhoids; 9) neglect, gross neglect and reckless at law "in other ways."   (Doc. 50, pp. 2, 3, ¶¶ 4).

He specifically alleges that on April 30, 2012, he sought medical treatment for his chronic hemorrhoid condition.  (*Id.* at p. 4, ¶ 13).  PA Steffan did not examine, diagnose, treat or prescribe any medication, and denied him a "soft boot shoe profile."  (*Id.* at 15).  He instructed Clemmons to use the ointment he purchased at the commissary.  (*Id.*).

On May 7, 2012, Clemmons sought treatment for pain and discomfort associated with the hemorrhoids and for "minimal bleeding from his bowel movements."  (*Id.* at 16).  PA Steffan instructed him to continue to use the hemorrhoid cream.  (*Id.*)  Clemmons explained to PA Steffan and Mace-Leibson that the cream was ineffective; they failed to administer any diagnostic tests, failed to examine him, failed to refer him to a specialist, and did not provide him

alternative treatment. (*Id.* at p. 5, ¶¶ 17, 21-24). He alleges that PA Steffan and Mace-Leibson failed to give him any form of treatment for two years. (*Id.* at 26).

On that same day, Clemmons filed a BP-8 informal resolution requesting surgery for his hemorrhoids and approval for a soft boot shoe profile. (*Id.* at 19). In response to the BP-8, Brosious denied the soft boot shoe profile and did not mention the surgery. (*Id.* at 19). Hufford denied his BP-9 appeal, Norwood denied his BP-10, and Watts denied his final appeal. (*Id.* at p. 6, ¶¶ 27-32).

Clemmons next sought treatment on June 11, 2013, at which time PA Lingenfelter denied him treatment and medication. (*Id.* at 34). He became so emotionally upset that he did not seek treatment for months. (*Id.* at 35).

On July 21, 2014, Clemmons sought treatment for jock itch. (*Id.* at p. 7, ¶ 37). PA Steffan denied him treatment and medication and instructed him to purchase cream from the commissary. (*Id.* at 38). He advised Steffan that he had no available money in his inmate account. (*Id.* at 39). Steffan did not provide him with alternative treatment.

On July 29, 2014, and August 5, 2014, Clemmons returned to medical with complaints of jock itch and inflamed protruding hemorrhoids accompanied by rectal bleeding. (*Id.* at 42; *Id.* at p. 8, ¶56). Steffan directed him to purchase medication from the commissary. (*Id.* at 44; *Id.* at 56). He advised Steffan that he

had no available money in his inmate account.  (*Id.*)  Steffan did not provide him with alternative treatment.  (*Id.* at 45, 56).  He alleges that Steffan and Mace-Leibson acted with "conscious flagrant indifference to the rights and safety of plaintiff."  (*Id.* at p. 8, ¶ 48).

On August 1, 2014, his mother deposited twenty dollars in his inmate account for the purpose of purchasing medication at the commissary.  (*Id.* at p. 9, ¶ 61).  Defendants Ladd and Fisher froze the money in "debt encumbrance" to meet the Court's $350.00 filing fee.  (*Id.*)  He sent emails to Defendants Ladd and Fisher explaining that they "were violating the court order."  (*Id.* at 62).  The account remained frozen.  He alleges that Defendants Ladd and Fisher "have a causal link in causing him physical and mental injury by withholding plaintiff [sic] money and hindering plaintiff from being able to purchase needed medication."  (*Id.* at 64).

He "wrote a (7) seven page complaint to E. Mace-Leibson DO concerning how plaintiff was being denied medical treatment and medication and Mace agreed with Steffan."  (*Id.* at p. 8, ¶¶ 50-55).  In email messages sent to Defendants Simonson and Hudson, Clemmons complained of denial of treatment for his medical conditions.  (*Id.* at pp. 8-9, ¶¶ 57-60).  Neither defendant responded.  (*Id.*)

He was transferred to a different facility on August 11, 2014.  (*Id.* at p. 9, ¶ 67).

Based on the foregoing facts, Clemmons brings an FTCA claim against the United States (*Id.* at pp. 10-12, ¶¶ 77-92), and a *Bivens* claim asserting "deliberate indifference in violation of the Eighth Amendment" against Watts, Norwood, Hufford, Hudson, Brosious, Simonson, Mace-Leibson, Steffan, Lingenfelter, Ladd, and Fisher (*Id.* at 13-14).

## C.    Discussion

Defendants move to dismiss the *Bivens* claim against Defendants Watts, Norwood, Hufford, Hudson, Brosious, Simonson, Mace-Leibson, Fisher and Ladd. A *Bivens* action is the federal counterpart to an action filed under 42 U.S.C. § 1983. *See Paton v. LaPrade*, 524 F.2d 82 (3d Cir.1975); *Farmer v. Carlson*, 685 F. Supp. 1335, 1338 (M.D.Pa. 1988). Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002*); Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a

plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior.*" *Id.* In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

Defendants seek to dismiss the claims against Defendants Watts, Norwood Hufford, Hudson, Brosious, Simonson and Mace-Leibson based on their lack of personal involvement in constitutional misconduct.  (Doc. 96, p 16).  The allegations against Defendants Watts, Norwood, and Hufford relate solely to their involvement in the denial of Clemmons's administrative remedy requests.  (Doc. 50, pp. 5-6, ¶¶ 19-20, 27, 28, 32).  Simonson and Hudson failed to respond to email messages (*Id.* at p. 8, ¶¶ 57, 59-60), and Mace-Leibson, in responding to Clemmons's seven-page complaint about his medical treatment, agreed with the course of treatment offered by medical personnel.  (*Id.* at 50-55).

Allegations that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct.  *See Rode*, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *see also Croom v. Wagner*, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dept. of Corrections*, No. 06-1444,

2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).  Clemmons argues that Watts, Norwood, Hufford, Hudson, Brosious, and Simonson, as "Supervisor's defendants" should be held liable on "plaintiff Eight [sic] Amendment deliberate indifference *Bivens* claim" based on their role in the grievance system and their failure to respond to his complaints. (Doc. 101, p. 3, ¶¶ 12, 14; p. 4, ¶¶ 15, 18, 19; Doc. 103, pp. 1,2).  The *Bivens* claim against Watts, Norwood, Hufford, Hudson, Brosious, and Simonson clearly arises out of their alleged failure to satisfactorily resolve or respond to Clemmons's prison grievances and complaints.

Clemmons fares no better in arguing that, as supervisors, they are "responsible that all subordinate medical officials in this action was to do their jobs in providing medical treatment to inmates such as me (Clemmons)."  (*Id.* at 3). The Third Circuit, has held that, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison. . . .  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. . . . [A]bsent a reason to believe (or actual knowledge) that prison doctors or their

assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable under the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).  Clemmons concedes that "these named defendants did not commit the violations, they all became responsible for them when they acquiesce [sic] to the conduct of their subordinate employees."  (Doc. 102, p. 6).  It is undisputed that Defendants Watts, Norwood, Hufford, Hudson, Brosious, and Simonson are not physicians and it is clear from the allegations set forth in the complaint that treatment by medical personnel was ongoing and that his attempt to hold these Defendants liable has no basis in any direct involvement in the alleged denial of medical treatment.

Based on the above, the motion to dismiss will be granted as to Defendants Watts, Norwood, Hufford, Hudson, Brosious, and Simonson.  Conversely, Clemmons's allegations are sufficient to state an Eighth Amendment claim against Defendant Mace-Leibson. (Doc. 50, p. 4, ¶ 6; p. 5, ¶¶  21-24, 26; p. 8, ¶¶ 48, 50-55).

Defendants also seek to dismiss the complaint against Defendants Ladd and Fisher based on Clemmons's failure to state sufficient facts to demonstrate an Eighth Amendment claim of deliberate indifference to his serious medical needs.

(Doc. 96, pp. 18-21).  For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Deliberate indifference has been found where a prison official:  "(1) knows  of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment."  *Rouse*, 182 F.3d at 197.

The allegations against Defendants Ladd and Fisher relate solely to their management of Clemmon's inmate account.  (Doc. 50, p. 9, ¶¶ 61-64).  He specifically alleges that "'Trust Fund Officials' Ladd and Fisher have a causal link in causing plaintiff physical and mental injury by withholding money and hindering plaintiff from being able to purchase his needed medication."  (*Id.* at 64).

These allegations are tenuous at best and fall far short of any indication that these Defendants knew of and disregarded an excessive risk to Clemmon's health. The Eighth Amendment claim against them is subject to dismissal.

## II.   MOTION FOR SUMMARY JUDGMENT

Remaining for disposition are the FTCA claim against the United States and the *Bivens* claim against Defendants Mace-Leibson, PA Steffan and PA Lingenfelter.

### A.   Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York*

*Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x. 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also*

*Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).  "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'"  *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### B.   Statement of Material Facts

Mace-Leibson is the Clinical Director of the Health Services Department at FCI-Schuykill.  (Doc. 97, ¶ 50).  She treats chronic care cases and provides clinical oversight of inmate care and treatment in accordance with BOP policy and applicable laws.  (*Id.*)  Steffan and Lingenfelter are Physician's Assistants at FCI-Schuylkill who provide treatment and advice to inmates in accordance with BOP policy and medical training.  (*Id.* at 51-53, 67).

 Clemmons entered FCI-Schuylkill on April 23, 2012, without any prescriptions.  (Doc. 97, ¶ 54).  On April 30, 2012, he sought medical treatment for external hemorrhoids, requested suppository medications and requested soft-soled shoes, claiming that the institutional boots caused his hemorrhoids to "fall out."

(*Id.* at 55).  PA Steffan advised Clemmons to purchase hydrocortisone cream from the commissary and apply it to his external hemorrhoids.  (*Id.* at 56, 57).  His condition did not warrant suppositories.  (*Id.* at 58).

Clemmons again sought treatment for his hemorrhoid condition the following day.  (*Id.* at 59).  Morning fog prohibited inmate movement on that day; Clemmons's appointment was rescheduled to May 4, 2012.  (*Id.*)  Fog also prohibited inmate movement on the morning of May 4, 2012, again preventing Clemmons from being seen in the Health Services Department.  (*Id.* at 60).  On May 7, 2012, Clemmons renewed his request for special shoes based on his belief that the institutional boots caused his hemorrhoids to "drop out."  (*Id.* at 62).  Steffan advised Clemmons that his complaint was medically impossible and that his footwear did not impact his hemorrhoid condition.  (*Id.* at 63).  Clemmons left without being examined.  (*Id.* at 64).

On June 11, 2013, Clemmons informed PA Lingenfelter that the commissary replaced the hemorrhoid cream with hemorrhoid pads, and that the pads were ineffective to treat his condition.  (*Id.* at 66, 67).  PA Lingenfelter provided Clemmons with a commissary slip for hydrocortisone cream.  (*Id.* at 68).

On July 21, July 29, and July 30, 2014, Clemmons complained *via* Inmate Request to Staff forms that he did not have money to purchase over-the-counter

medications for his hemorrhoids or jock itch. (*Id.* at 71). PA Steffan and Mace-Leibson noted that Clemmons had funds in his inmate account and therefore had the ability to purchase over-the-counter medications from the commissary. (*Id.* at 72).

At no time did Mace-Leibson provide medical care to Clemmons. (*Id.* at 74). Mace-Leibson describes medical protocol as it relates to hemorrhoids as follows: "Hemorrhoids become clinically relevant when they thrombose, and cause regular bleeding, which leads to anemia. For hemorrhoids that are not clinically relevant, treatment is over the count medication; and surgery is elective. Surgery becomes necessary when it is medically indicated that a person is experiencing significant blood loss, and surgery must be performed to stop blood loss." (Doc. 97-1, p. 35, Declaration of Mace-Leibson, ¶14).

Clemmons did not seek further medical treatment for hemorrhoids while housed at FCI-Schuylkill. (*Id.* at 69). He was transferred to a different institution on August 11, 2014. (*Id.* at 70, 76).

Clemmons first sought treatment with Health Services after being transferred to the Federal Correctional Institution at Gilmer on October 14, and October 15 2014, for an elevated temperature and dizziness. (*Id.* at 76-78). Blood work did not indicate anemia. (*Id.* at 78). On October 24, 2014, his hemorrhoid condition

was reported to be stable.  (*Id.* at 80).  He sought treatment for hemorrhoids again on March 24, 2015, and it was documented "that he had internal hemorrhoids, but no clinically significant symptoms such as external hemorrhoids, thrombosed hemorrhoids, bleeding, fissure, trauma, or a prolapsed rectum."  (*Id.* at 82).

In April 2015, he complained of rectal pain and bleeding with bowel movements; he was diagnosed with external hemorrhoids with minimal bleeding. (*Id.* at 83).   He underwent a hemorrhoidectomy on August 25, 2015.  (*Id.* at 86).

### C.   Discussion

#### 1.   FTCA Claim

The FTCA vests exclusive jurisdiction in district courts for claims against the United States for money damages involving "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).

Clemmons alleges a medical negligence claim.  The United States seeks an entry of summary judgment based on Clemmons's failure to file a Certificate of Merit ("COM") pursuant to PA.R.C.P 1042.3(a)(1).  Rule 1042.3(a)(1) provides

that "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that . . . an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was  a cause in bringing about the harm. . . ."  The Third Circuit held in *Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 264–65 (3d Cir. 2011), that Pennsylvania's Certificate of Merit requirement is substantive law and must be applied as such by the federal courts.

On March 8, 2016, the United States Attorney's Office notified Clemmons of its intent to move for summary judgment based on his failure to file a COM pursuant to PA.R.C.P. 1042.3(a)(1) and the Third Circuit decision in *Schmigel v. Uchal*, 800 F.3d 113, 122-24 (3d Cir. 2015).  (Doc. 69, ¶ 7; Doc. 97, ¶ 99).  On October 20, 2016, the Court addressed a number of Clemmons's motions (Docs. 72, 73, 74, 77, 78) seeking to excuse or waive compliance with the COM requirement set forth at PA.R.C.P. 1042.3(a)(1), based on his assertion that he was

seeking to advance ordinary negligence claims, not claims of professional negligence.  In considering his motions, the Court considered that courts distinguish medical malpractice from ordinary negligence in two ways: " '[f]irst, medical malpractice can occur only within the course of a professional relationship. Second, claims of medical malpractice necessarily raise questions involving medical judgment." ' was considered.  *Ditch v. Waynesboro Hospital*, 917 A.2d 317, 321–22 (Pa. Super. Ct. 2007) (quoting *Grossman v. Barke*, 868 A.2d 561, 570 (Pa. Super. Ct. 2005)).  The Court also noted that in determining whether a claim involves medical malpractice, a court must ask: " '(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Id.*  Answering both these questions affirmatively means that the claim involves medical malpractice and requires a certificate of merit.  *Id.*

After thorough review of the allegations in the amended complaint (Doc. 50, pp. 2-3, ¶¶ 4(a) – (k), pp. 4-15, ¶¶ 13-17, 21-24, 26, 34-36, 42-45, 56-57, 77-86, 88-92), the Court concluded that Clemmons "alleges actions that occurred within the course of a professional relationship and raises questions of medical judgment beyond the realm of common knowledge and experience, and, therefore, he is

asserting claims of professional negligence." (Doc. 110, p. 2). Clemmon's

motions were denied and Clemmons was directed to file a certificate of merit on or

before December 1, 2016. (Doc. 110, ¶¶ 1, 3). He has failed to do so. The FTCA

claim against the United States will be dismissed for failure to comply with the

COM requirement.

### 2.   *Bivens* Claim

As noted above**,** deliberate indifference to a serious medical need has been

found where a prison official: "(1) knows  of a prisoner's need for medical

treatment but intentionally refuses to provide it; (2) delays necessary medical

treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving

needed or recommended treatment." *Rouse*, 182 F.3d at 197. Only egregious acts

or omissions can violate this standard. *See White v. Napoleon*, 897 F.2d 103, 108-

10 (3d Cir. 1990).

Thus, a complaint that a physician or a medical department "has been

negligent in diagnosing or treating a medical condition does not state a valid claim

of medical mistreatment under the Eighth Amendment. . . ." *Estelle*, 429 U.S. at

106. "Allegations of medical malpractice are not sufficient to establish a

Constitutional violation." *Spruill*, 372 F.3d at 235. "[A]s long as a physician

exercises professional judgment his behavior will not violate a prisoner's

constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer*, 991 F.2d at 69.

In addition, mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of "deliberate indifference." *See Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987); *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D.Pa. 1988). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), *United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979); *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D.Pa.), *aff'd*, 101 F.3d 691 (3d Cir. 1996.) "[T]he key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what plaintiff desires." *Farmer*, 685 F. Supp. at 1339 (citation omitted).

Clemmons fails to establish that Defendants acted with deliberate indifference to his hemorrhoid condition.  Over the approximate twenty-eight month period at issue, Clemmons only sought treatment for his hemorrhoid condition from the Health Services Department on three occasions.  On the first occasion, PA Steffan determined that he did not meet the requirement for suppositories and recommended that he purchase hydrocortisone cream from the commissary.  On the second occasion, Clemmons was dissatisfied with PA Steffan's determination that his institutional boots were not causing his hemorrhoids to "drop out" and "when educated about how his shoe wear and hemorrhoids are UNRELATED he left the exam room."  (Doc. 97-1, pp. 579-80).  PA Lingenfelter encountered Clemmons once.  Clemmons complained to Lingenfelter that he was only able to purchase hemorrhoid pads at the commissary and that they were ineffective to treat his condition.  (*Id.* at 559).  He requested authorization for hydrocortisone cream, which PA Lingenfelter provided by giving him a commissary slip for the cream.  (*Id.*)

Clemmons argues that he made subjective complaints to Steffan and Mace-Leibson that his hemorrhoids would bleed during bowel movements.  (Doc. 104-1, p. 2).  This is unsupported by the Clinical Encounter notes and there is no mention of bleeding in the inmate requests to staff members seeking treatment for the

24

hemorrhoids, with the exception of a request dated July 29, 2014, in which he is

primarilycomplaining about his inability to purchase his hemorrhoid cream from

commissary because he cannot access his inmate account.   (Doc. 97-1, pp. 514,

544, 559, 579-80, 582-85, 644-45).   Defendant Mace-Leibson never treated

Clemmons; she simply responded to his complaint or cosigned medical treatment

records.  (*Id.*)

Clemmons also attempts to support his position by relying on treatment that

he received either prior to his arrival at FCI-Schuylkill or after his departure.

(Doc. 100; Doc. 102, p.4 106, ¶¶ 7-10, 22-25; Doc. 109).   This argument is

unpersuasive.   The fact that he was prescribed various courses of treatments at

other institutions is only indicative of the state of his condition at the time he

presented for treatment.   It is not indicative of his condition while undergoing

treatment at FCI-Schuylkill.   This is an instance where an inmate was provided

with treatment and disagrees with the course of treatment.   PA Steffan provided

him with hemorrhoid and constipation education sheets that contained a wealth of

information regarding treating these condition and minimizing complications

through diet and medications available at the commissary.   (Doc. 97-1, pp. 514-

16).   PA Steffan and PA Lingenfelter advised Clemmons that the medication

necessary to treat the condition could be obtained from the commissary and

provided him with the commissary forms necessary to obtain the medication. Although PA Steffan did not examine Clemmons or provide him with a stool softener, this court will not attempt to second-guess the propriety or adequacy of the course of treatment prescribed since such determinations remain a question of sound professional judgment.

Clemmons also contends that Mace-Leibson and Steffan delayed or denied his treatment when he did not have sufficient funds to purchase the over-the-counter medication from the commissary. BOP Program Statement P6541.02, which governs inmate access to over-the-counter medication, provides that "this program statement establishes a program allowing inmates improved access to Over-the-Counter (OTC) Medications by making them available for sale in the commissary and improves the allocation of medical resources so that inmates' medical needs will continue to be met." BOP Program Statement P6541.02, § 549.30. The statement further provides that [i]nmates will purchase OTC medications from the commissary with their personal funds. However, inmates will be given OTC medications at the institution pharmacy if they are determined to be without funds (indigent)." *Id.* at Section 7. "An inmate without funds is an inmate who has not had a trust fund account balance of $6.00 for the past thirty days." *Id.* at § 549.31, Section 8(a). The record is devoid of any facts that would

establish that Clemmons was without funds for the relevant thirty days. (Doc. 97-1, pp. 504- 516).  Consequently, this argument is without merit.

## VI.    **<u>CONCLUSION</u>**

Based on the foregoing, Defendants' motion (Doc. 90) to dismiss will be granted with respect to Defendants Watts, Norwood, Hufford, Hudson, Brosious, Simonson, Ladd, and Fisher.  Defendants' motion (Doc 90) for summary judgment will be granted with respect to the United States and Defendants Mace-Leibson, PA Steffan, and PA Lingenfelter.

An appropriate Order will issue.