# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN CHRISTOPHER CLEMMONS, | : | |
| Plaintiff, | : | 1:15-cv-2003 |
| | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

# **MEMORANDUM**

**May 24, 2021**

Plaintiff Sean Christopher Clemmons ("Clemmons"), a former federal inmate incarcerated at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill", commenced this action on May 12, 2014. (Doc. 1). The only claim remaining for disposition is Clemmons's Federal Tort Claim Act claim.

Presently pending is the United States' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 143). The motion, filed on February 4, 2021, is accompanied by a statement of material facts (Doc. 144) and a supporting brief. (Doc. 145). Clemmons failed to oppose the motion. Consequently, on March 5, 2021, an Order issued affording him until March 18, 2021, to file an opposition brief and statements of material facts in accordance with

Local Rule 56.1.[1] (Doc. 146). The Court cautioned Clemmons that his failure to adhere to the deadlines would result in the statement of material facts being deemed admitted and the motion being deemed unopposed. On March 18, 2021, he moved for an extension of time. The Court granted the motion and afforded him until April 23, 2021, to properly oppose the motion. (Doc. 148). Clemmons has failed to file an opposition brief or controvert the statement of material facts. Hence, Defendant's statement of material facts is deemed admitted and the motion is deemed unopposed. For the reasons set forth below, the motion will be granted.

I. **STANDARD OF REVIEW**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

---

[1] Local Rule 56.1 states that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the moving party], as to which it is contended that there exists a genuine issue to be tried… All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." *See* L.R. 56.1

2

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in

3

order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

## II. STATEMENT OF MATERIAL FACTS

Clemmons arrived at FCI-Schuylkill on April 23, 2012. (Doc. 144, p. 2, ¶ 2). On April 30, 2012, he requested suppository medications from Physician's Assistant ("PA") Steffan for treatment of his hemorrhoids. (*Id.* at ¶ 3). He also requested soft-soled shoes, claiming the institutional boots caused his hemorrhoids to "fall out." (*Id.*). On April 30, 2012, PA Steffan noted that Clemmons purchased over-the-counter medication at the inmate commissary on April 23, 2012, and advised him to purchase hydrocortisone cream from the commissary and apply it to his external hemorrhoids, as his condition did not meet the requirements for suppositories. (*Id.* at ¶¶ 4-6).

On May 7, 2012, Clemmons again asked PA Steffan for special shoes

because his institution issued boots were causing his hemorrhoids to "drop out." (*Id*. at p. 3, ¶ 10). PA Steffan advised him that his complaint was not medically possible and that his footwear had no bearing on his hemorrhoid issues. (*Id*. at ¶ 11). Clemmons left the Health Services Department without being examined by PA Steffan. (*Id*. at ¶ 12).

Clemmons presented to the Health Services Department on June 11, 2013, complaining to PA Lingenfelter that the commissary replaced his hemorrhoid cream with hemorrhoid pads, but the pads did not provide him relief. (*Id.* at pp. 3, 4, ¶¶ 13-15). On June 13, 2013, PA Lingenfelter provided him with a commissary slip for hydrocortisone cream. (*Id.* at p. 4, ¶ 16).

Between June 12, 2013, and August 11, 2014, although he did not seek medical treatment for hemorrhoids, he submitted written Inmate Request to Staff forms dated July 21, July 29, and July 30, 2014, wherein he complained that he did not have money to purchase the over-the-counter creams he needed for his hemorrhoids and jock itch. (*Id.* at ¶¶ 17-19). In responding to his requests, PA Steffan and Clinical Director Dr. Ellen Mace-Leibson ("Dr. Mace-Leibson") noted that Clemmons had funds in his inmate trust account sufficient to purchase his over-the-counter medications from the commissary/pharmacy. (*Id.* at ¶ 20).

According to Dr. Mace-Leibson, "[h]emorrhoids become clinically relevant

when they thrombose, and cause regular bleeding, which leads to anemia. For hemorrhoids that are not clinically relevant, treatment is over the counter medication and surgery is elective. Surgery becomes necessary when it's medically indicated that a person is experiencing significant blood loss, and surgery must be performed to stop blood loss." (Doc. 144-1, Declaration of Dr. Mace-Leibson ("Mace-Leibson Decl.," pp. 7, 8, ¶ 14).

Clemmons was transferred to the Federal Correctional Institution at Gilmer ("FCI-Gilmer") on August 11, 2014. On October 4, 2014, he reported to the Health Services Department for an elevated body temperature. (Doc. 144, p. 5, ¶ 25). The following day, he returned to the Health Services Department complaining of dizziness. (*Id*. at p. 6, ¶ 26). The lab work did not show anemia, which would be present when hemorrhoids bleed regularly. (*Id*.). On October 20, 2014, he reported that his hemorrhoids were stable, with no rectal itching or pain, no blood in his stools, and no black stools. (*Id* at ¶ 28).

On March 24, 2015, he sought treatment for rhinitis and hemorrhoids. (*Id*.). According to the clinical encounter notes, he used cream from the commissary for a history of hemorrhoids and had no rectal bleeding. (*Id.* at ¶ 29). The notes also indicate that he had internal hemorrhoids, but no clinically significant symptoms such as external hemorrhoids, thrombosed hemorrhoids, bleeding, fissure, trauma,

or a prolapsed rectum. (*Id.* at ¶ 30).

On April 16, 2015, he sought treatment in the Health Services Department at a BOP facility in Oklahoma for rectal pain and bleeding. (*Id.* at p. 7, ¶ 31). He was diagnosed with external hemorrhoids with minimal bleeding. (*Id.*). On April 22, 2015, he sought treatment for chronic hemorrhoids that bleed with bowel movements. (*Id.* at ¶ 32). During the April 22, 2015 evaluation, the treating physician noted "prior CBC normal, repeat pending." (*Id.* at ¶ 33). Clemmons underwent a hemorrhoidectomy on August 25, 2015. (*Id.* at ¶ 34).

Dr. Mace-Leibson opines that "a review of the record reveals that inmate Clemmons received medically reasonable treatment for the symptoms he experienced." (Doc. 144-1, Mace-Leibson Decl., p. 8, ¶ 18).[2]

## III. **DISCUSSION**

The Federal Tort Claims Act ("FTCA") provides that "the United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The substantive state law where the tortious conduct occurs, in this instance, Pennsylvania, governs a FTCA claim, *see Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004).

---

[2] Dr. Mace-Leibson did not personally provide medical services to Clemmons. (Doc. 144-1, p. 8, ¶ 18).

Under Pennsylvania law, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)). The existence of an injury, by itself, does not prove a doctor's negligence. *Mitchell v. Shikora*, 209 A.3d 307, 315 (Pa. 2019) (citations omitted). Rather, under Pennsylvania law, to "establish a cause of action for negligence, the plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *Pittsburgh Nat'l Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. 1994)); *see also Mitchell*, 209 A.3d at 315.

"Determining whether there was a breach of duty, however, involves a two-step process: the court must first determine the standard of care; it then must examine whether the defendant's conduct measured up to that standard. Not only does the plaintiff have the burden of proving that the defendant did not possess and employ the required skill and knowledge, or did not exercise the care and judgment

9

of a reasonable professional, he or she must also prove that the injury was caused by the failure to employ that requisite skill and knowledge." *Toogood*, 824 A.2d at 1149. Plaintiffs must also demonstrate that the doctor's conduct was a "substantial factor in bringing about" their harm—liability does not extend if the injuries would have occurred in the absence of negligence. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978) (citations omitted).

When he initially presented for treatment in April and May 2012, medical staff evaluated him and, based on his symptoms, directed him to purchase hydrocortisone cream from the commissary and instructed him on application. (Doc. 144, p, 2, ¶¶ 4-6). After the passage of nearly a year, Clemmons complained that the commissary replaced his hemorrhoid cream with hemorrhoid pads, which were ineffective. (*Id.* at pp. 3, 4, ¶¶ 13-15). In response, medical staff provided him with a commissary slip for hydrocortisone cream. (*Id.* at p. 4, ¶ 16). Over the course of the next year, did not raise any new complaints with regard to his hemorrhoid or jock itch conditions. Although he complained that he did not have money to purchase the over-the-counter creams he needed for his conditions, medical staff confirmed that he had funds in his inmate trust account sufficient to purchase the creams from the commissary/pharmacy. (*Id.* at ¶¶ 17-20).

After being transferred from FCI-Schuylkill to FCI-Gilmer, he was seen in

October 2014, in the Health Services Department for an elevated body temperature. (*Id.* at p. 5, ¶ 25). When he presented with dizziness the following day, lab work was ordered to rule out anemia. (*Id*. at p. 6, ¶ 26). On October 20, 2014, he reported that his hemorrhoids were stable, with no rectal itching or pain, no blood in his stools, and no black stools. (*Id* at ¶ 28). Approximately five months later, he sought treatment for rhinitis and hemorrhoids. (*Id*. at ¶ 29). His records indicated that he used cream from the commissary for a history of internal hemorrhoids with no rectal bleeding and that he had no clinically significant symptoms such as external hemorrhoids, thrombosed hemorrhoids, bleeding, fissure, trauma, or a prolapsed rectum. (*Id.* at ¶ 30).

On April 16, 2015, he reported to the Health Services Department at a BOP facility in Oklahoma complaining of rectal pain and bleeding and was diagnosed with external hemorrhoids with minimal bleeding. (*Id*. at p. 7, ¶ 31). On April 22, 2015, he sought treatment for chronic hemorrhoids that bleed with bowel movements. (*Id.* at ¶ 32). During the April 22, 2015 evaluation, the treating physician noted "prior CBC normal, repeat pending." (*Id.* at ¶ 33). According to the record, Clemmons underwent a hemorrhoidectomy on August 25, 2015. (*Id.* at ¶ 34).

Dr. Mace-Leibson opines that treatment for hemorrhoids that are not

11

clinically relevant, *i.e.*, lack of thrombosis or regular bleeding, is over the counter medication. More invasive treatment in the form of surgery only becomes necessary when a person is experiencing significant blood loss. (Doc. 144-1, Declaration of Dr. Leibson, pp. 7, 8, ¶ 14). In this instance, this is precisely the treatment course followed. Initially, Clemmons received non-invasive treatment with over the counter medications. However, once he experienced regular bleeding, he underwent a hemorrhoidectomy. After a comprehensive review of the pertinent medical records, Dr. Mace-Leibson concluded that Clemmons received medically reasonable treatment for the symptoms he experienced. (Doc. 144-1, p. 8, ¶ 18). Clemmons fails to dispute this conclusion.

Because Clemmons fails to establish the elements of his medical negligence claim, *i.e.* that the Defendant breached a duty to provide him with proper medical care for his hemorrhoid and jock itch conditions by demonstrating that the medical providers did not possess and employ the required skill and knowledge to treat his condition, or failed to exercise the care and judgment of a reasonable medical professional, and that such conduct proximately caused his alleged injuries, Defendant is entitled to judgment as a matter of law.

IV. <u>**CONCLUSION**</u>

Based on the foregoing, Defendant's motion (Doc. 143) for summary

judgment is deemed unopposed and will be granted.

A separate Order will issue.